**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **WILLIE EARL DUNKLIN, 174406** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **2:06-CV-1063-MEF** |
| **BOB RILEY, ET AL.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

**ANSWER AND SPECIAL REPORT**

COME NOW the Defendants, **Bob Riley, Richard Allen, Gwendolyn Mosley, Carter Davenport, Tyrone Barrow, Brian Mitchell, Latrice Greene, and Sharon Blakely,** by and through the Attorney General for the State of Alabama, the Honorable Troy King, and in accordance with this Honorable Court's December 5, 2006 Order, offer the following Answer and Special Report:

**PARTIES**

1. Plaintiff, Willie Earl Dunklin is an Alabama Department of Corrections ("ADOC") inmate currently incarcerated at Easterling Correctional Facility ("ECF").

2. Defendant Bob Riley is Governor of the State of Alabama.

3. Defendant Richard Allen is the Commissioner of ADOC.

4. Defendant Gwendolyn Mosley is employed by ADOC as a Warden III at ECF.

5. Defendant Carter Davenport is employed by ADOC as a Warden II at ECF.

6. Defendant Tyrone Barrow is employed by ADOC as a Classification Specialist at ECF.

7. Defendant Brian Mitchell is employed by ADOC as a Psychological Associate at ECF.

8. Defendant Latrice Greene is employed by ADOC as a Classification Specialist Supervisor at ECF.

9. Defendant Sharon Blakely is employed by ADOC as a Mail Clerk at ECF.

## EXHIBITS

In accordance with this Honorable Court's Order, the Defendants submit the following exhibits:

EXHIBIT 1 – Affidavit of Gwendolyn Mosley;

EXHIBIT 2 – Affidavit of Carter Davenport;

EXHIBIT 3 – Affidavit of Tyrone Barrow;

EXHIBIT 4 – Affidavit of Brian Mitchell;

EXHIBIT 5 – Affidavit of Latrice Greene;

EXHIBIT 6 – Affidavit of Sharon Blakely;

EXHIBIT 7 – ADOC Regulation 448 – Inmate Mail

## PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are not a model of clarity and vary per defendant. As best as the undersigned can discern, Plaintiff alleges Defendants Bob Riley, Commissioner Richard Allen, Warden Gwendolyn Mosley, Carter Davenport, Brian Mitchell, Latrice Greene and Sharon Blakely have violated his Eighth and Fourteenth Amendment rights by providing him with prison accommodations that are overcrowded, unsafe and pose some undefined health hazard.

2

Plaintiff alleges that unspecified defendants have forced him to take counter-productive programs to get government funds illegally yet have interfered with his incarceration by not granting him any rehabilitative advancement or work release.

Plaintiff alleges that Defendant Blakely is not bonded and somehow this infringes on his First Amendment rights.  He further alleges that Defendant Blakely intercepts and delays his U.S. Mail.  Plaintiff also contends that stamps and other valuables of inmates are disappearing but without actually accusing  Blakely of taking said items.  The Plaintiff does not state any facts to support his suppositions.

## DEFENDANTS' RESPONSE

1.    The Defendants deny that they violated the Plaintiff's constitutional rights.

2.    The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.    The Plaintiff has failed to state a claim upon which relief may be granted.

4.    The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.    The Defendants are immune from suit due to qualified immunity.

6.    The Plaintiff can not hold the Defendants liable under the theory of respondeat superior.

## STATEMENT OF FACTS

Plaintiff is incarcerated in the Easterling Correctional Facility which has a designed capacity of 650 inmates and on 14 December 2006, housed 1263 inmates. (Ex. 1, Pg. 1)  All ADOC facilities are similarly housing numbers of inmates over designed capacities. (Ex. 1, Pg. 1)  ECF is understaffed, but officers work overtime to fill in the areas as needed.

On 3 May 2006, Classification Specialist Tyrone Barrow performed a semi-annual review of inmate Dunklin in which he recommended no changes due to the time remaining for Dunklin to serve and due to his lack of participation in the Crime Bill SAP, AA/NA. Barrow recommended that Dunklin participate in those programs prospectively. (Ex. 3). In November of 2006, inmate Dunklin's annual progress review was conducted which resulted in a decision of "no change due to negative behavior." (Ex.3) Defendants Barrow, Davenport, Mitchell and Greene participated in the annual progress review of Dunklin. Greene was a non voting member of the panel regarding the issues of placement, custody or security level. (Ex.1, 2, 3, 4, 5).

Sharon Blakely is the Mail Clerk at ECF and has the responsibility to inspect, sort and distribute inmate mail. She did not steal any property of inmates, be it money, stamps, mail or anything else. (Ex. 5).

## ARGUMENT

### Summary Judgment Standard

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come

forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

## I. Cruel and unusual punishment claims are due to fail.

Plaintiff appears to be making the argument that the conditions of his confinement violate the Eighth Amendment against cruel and unusual punishment because ECF is overcrowded, lacks sufficient security and constitutes an unspecified health hazard.

Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety.

Farmer, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991));
*Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980
(11th Cir. 1994).

The Supreme Court has held that deliberate indifference describes a state of mind
more blameworthy than negligence. *Farmer*, 511 U.S. at 834. "[A] prison official cannot
be found liable under the Eighth Amendment . . . unless the official knows of and
disregards an excessive risk to inmate health or safety; the official must both be aware of
facts from which the inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference." *Id*. at 837

When evaluating prison conditions, courts should keep in mind that a prison
population is comprised of a "large, confined population of convicted felons, not a
nursery school." *Battle v. Anderson*, 788 F.2d 1421, 1426 (10th Cir. 1986)

In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and
unusual punishment, a plaintiff must show: "an objectively serious need, an objectively
insufficient response to that need, subjective awareness of facts signaling the need, and
an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254,
1258 (11th Cir. 2000).

> **1.    The Plaintiff has failed to satisfy the objective component
> required for claims regarding alleged unconstitutional
> conditions of confinement.**

"The objective component 'embodies "broad and idealistic concepts of dignity,
civilized standards, humanity, and decency . . . ,"' 'but must be balanced against
competing penological goals.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting
*Jackson v. Bishop*, 404 F.2d 571, 579(8th Cir. 1968)   Although several conditions of

confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. at 305

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349 — and permits prison conditions that are "restrictive and even harsh," *Farmer v. Brennan*, 511 U.S. at 833 (quoting *Rhodes,* 452 U.S. at 347) "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (excessive force against prisoner may be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347) This proposition "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (cruel and unusual to require denationalization of certain wartime deserters) "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (citations omitted)

The Plaintiff has failed to show an "objective" violation of the Eighth Amendment. He has failed to allege the deprivation of a single identifiable need such as food, warmth or exercise. The Plaintiff's claims do not rise to the level of a constitutional violation.

Plaintiff attempts to buttress his amorphous allegation of unconstitutional conditions of confinement by generally alleging a lack of security. He in no way alleges that he has been harmed or attacked by an inmate or prison personnel as a result of insufficient security. Plaintiff's assertion of lack of security is patently vague and frivolous. The testimony of Warden Mosley is that understaffing is compensated by officers working overtime as needed.

Under the Eighth Amendment's prohibition of cruel and unusual punishment, inmates have a constitutional right to protection from the constant threat of violence and physical assault by other inmates. *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates.") (internal quotes and citations omitted). Nevertheless, not every injury inflicted on an inmate by another inmate results in a constitutional violation. *Farmer*, 511 U.S. at 834. As the United States Supreme Court explains in *Wilson v. Seiter*:

> After incarceration, only the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety … It is *obduracy and wantonness*, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986)) (emphasis added).  In *Farmer v. Brennan*, the United States Supreme Court held that the Eighth Amendment is violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828.   Prison officials may be liable "where they are 'deliberately indifferent to a prisoner's constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'" *Zatler*, 802 F. 2d at 400-401 (quoting *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)).  It is important to note, however, that a mere negligent failure to protect an inmate from an attack by a fellow inmate does not result in liability under §1983.  *Farmer*, 511 U.S. at 835 (Deliberate indifference "describes a state of mind more blameworthy than negligence."); *see also Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Bailey v. Board of County Commissioners*, 956 F.2d 1112, 1121 (11th 1992).

The "deliberate indifference" standard is comprised of two parts.  First, the standard requires the alleged deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834 (citations omitted).  "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. (internal quotes and citations omitted).  Where an inmate's complaint involves an attack by another inmate, this objective aspect of the standard requires the inmate to establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer*, 511

U.S. at 834.   Second, in *Farmer*, the Supreme Court adopts a subjective test for "deliberate indifference," holding:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.   Furthermore, the known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a correctional officer's failure to protect can constitute deliberate indifference.   *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).   In addition, the plaintiff must provide proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional violation to establish a claim under 42 U.S.C. §1983.   *Zatler*, 802 F.2d at 401.   When defendants are sued in their individual capacities, the causation inquiry must be more "refined and focused."  *Id*.

In this case Plaintiff fails to state a cause of action entirely because he alleges no injury.  He makes no allegations that there is a "serious risk of substantial harm" or that there is a strong likelihood of serious injury, much less any deliberate indifference.

Plaintiff then attempts to buttress his claim of unconstitutional conditions of confinement by alleging that conditions are a health hazard.  This allegation is so vague, that is fails to put the Defendants on notice as to what allegedly constitutes a health hazard and therefore, no response can be given.

The Court should note that the Plaintiff's initial assignment to ECF would have been made at Kilby Correctional Facility due to the fact that all male inmates enter the

state penal system. None of the instant defendants work at Kilby or had anything to do with the Plaintiff's assignment to ECF.

## II. Plaintiff is not forced to participate in "self-help" programs and fails to state a constitutional cause of action.

Plaintiff alleges that he has been forced to "take counter productive unneeded program. Even if this were true, which it is not, it is not clear what constitutional cause of action this would constitute. The facts are that Plaintiff has been recommended for substance abuse programs, but has not been forced to participate in these programs.

As to Plaintiff's assertion that taxpayer money is being misspent on these programs, he lacks standing even if taxpayer standing existed, inasmuch he is an inmate who is not paying taxes.

## III. Plaintiff's mail is handled according ADOC policy.

Plaintiff alleges Defendant Sharon Blakely intercepts and delays his mail. Inmate mail protocol is outlined in ADOC Regulation 448. In *Turner v. Safely* 492 U.S. 78, 89-91 (1987), the Supreme Court stated the legal standard for reviewing the constitutionality of prison regulations as follows:

> If *Pell*, *Jones*, and *Bell* have not already resolved the question posed in *Martinez*, we resolve it now: when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if "prison administrators…, and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union*, 433 U.S., at 128, 97 S.Ct., at 2539. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best

solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Procunier v. Martinez*, 416 U.S., at 407, 94 S.Ct., at 1808.

　　As our opinions in *Pell*, *Bell*, and *Jones* show, several factors are relevant in determining the reasonableness of the regulation at issue.

The *Turner* Court listed the factors in determining the validity of prison regulations as (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates and if there are other avenues to exercise the asserted right; (3) what impact the accommodation of the asserted constitutional right will have on guards, other inmates and the allocation of prison resources generally; and (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

In this case, the Court should note that Plaintiff alleges only a slight delay in receiving his mail. ADOC's mail policies have withstood constitutional challenges. *See Smith v. Mosley*, 2006 WL 559492 (MD Ala.), preauthorization of subscription magazines, constitutional; requiring bed and dorm number, constitutional; *Fawaad v. Herrin*, 874 F Supp 350, (ND Ala. 1995) dual use name policy, constitutional. Plaintiff merely states his mail is delayed and that alone fails to allege a constitutional violation.

## IV. Defendants are immune from suit.

Plaintiff's suit is barred under the doctrines of discretionary function and qualified immunity. Qualified immunity protects government officials from civil trials and liability when their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284,

1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Defendants are also entitled to discretionary-function immunity, which protects the discretionary acts of state employees from suit unless a plaintiff can show the employee acted maliciously or in bad faith. *Taylor v. Adams*, 221 F.3d 1254, 1261 (11th Cir. 2000). As Plaintiff has not shown that the Defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the Plaintiff asserts his claims against the defendants in their official capacities, the claims must fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). All Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

**V. Plaintiff can not hold Defendants Bob Riley and Richard Allen liable under the theory of respondeat superior.**

Presumably, Plaintiff's claim against Governor Bob Riley and Commissioner Richard Allen is an attempt to hold them responsible through the concept of respondeat superior which is not available to a plaintiff under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Absent some allegation that these defendants knew of, sanctioned, participated in, or were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1504 (11th Cir. 1985) *cert. denied*. 476 U.S. 1115 (1986)

## VI. Plaintiff has not stated sufficient injury to state a claim

Plaintiff has failed to state any physical injury that he has suffered as a result of his confinement. He alleges some unknown health hazard, but does not state what the hazard is and does not claim to have been harmed by this alleged health hazard. At best, Plaintiff may be attempting to claim an emotional injury which is not allowed under 42 U.S.C. 1997e(e). To state a claim, an inmate's injuries need not be significant, but must be more than *de minimus*. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.); modified in part by *Harris v. Garner*, 216 F. 3d 970 (2000). As stated in 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." To satisfy the injury requirement, an inmate need not show permanent injury, but must "offer some evidence of injury beyond a minimal one." *Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990). Because Plaintiff has not suffered any physical injury, he has not stated an Eighth Amendment claim and the Defendants are entitled to summary judgment.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.  WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr. WAL047
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 - fax

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 23rd day of January, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

> Willie Earl Dunklin, 174406
> Easterling Correctional Facility
> 200 Wallace Drive
> Clio, AL 36017-2615

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.

16

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406       )
    Plaintiff,                   )
                                 )
    VS.                          )
                                 )     CASE NO. 2:06-CV-1063-MEF
                                 )
BOB RILEY, et.al.                  )
    Defendant (s)                )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley, and I am presently employed as Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Easterling Correctional Facility was designed to house approximately 650 inmates, (50 inmates in the Segregation Unit and 600 inmates in 5 Population Dormitories). At the present time, approximately 1263 inmates are assigned to this Facility. All ADOC Facilities are over the required limit of inmates. I do not have control over the number of inmates entering this facility.

ADOC is understaffed with Correctional Officers, and Easterling is not fully staffed at the present time, but we have officers to work overtime to fill in the areas that are needed.

I have not forced Inmate Willie Dunklin to take a Counter Productive Program (Crime Bill SAP). Inmate Dunklin's Classification Specialist, Mr. Tyrone Barrow recommended Crime Bill SAP and AA/NA as programs needed. On May 3, 2006, Inmate Dunklin's Semi-Annual Review was conducted; the recommendation was for "No Change" based on time served and his lack of program participation (Exhibit #1). On, November 20, 2006, Inmate Dunklin's Annual Progress Review was conducted, the recommendation was for "No Change" because of on going negative behavior (Exhibit #2).

I have not violated any of Inmate Dunklin's Constitutional Rights.

Affidavit – Gwendolyn Mosley
Civil Action – 2:06-CV-1063-MEF
Page 2

_____
GWENDOLYN MOSLEY

SWORN TO AND SUBSCRIBED TO before me this the ___14th___ day of
___December___, 2006.

_____
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

# EASTERLING CORRECTIONAL FACILITY

## SEMI-ANNUAL REVIEW

_05/03/2006_

TO: _Dunklin, Willie_ AIS: _B/174406  9A-59_

FROM:  TYRONE S. BARROW, CLASSIFICATION SPECIALIST

YOUR INSTITUTIONAL FILE HAS BEEN REVIEWED AND YOU HAVE BEEN RECOMMENDED FOR THE
FOLLOWING ACTIONS:

_____ RESTORATION OF _____ GOOD TIME.

NO CHANGES AT THE TIME DUE TO:

_____ A.    RESTRICTED OFFENDER STATUS

_____ B.    SEX OFFENDER STATUS

_____ C.    NEGATIVE BEHAVIOR _____

_____

_____

_____ D.    RISK ASSESSMENT SCORE _____

__X__ E.    TIME TO SERVE

__X__ F.    LACK OF PROGRAM PARTICIPATION/COMPLETION _CBSAP,AA/NA_

_____

_____ G.    DETAINER _____

_____ H.    OTHER _____

_____

THE CLASSIFICATION COMMITTEE WILL CONDUCT YOUR ANNUAL PROGRESS REVIEW ON
_11/06_ .    YOUR PRESENCE IS REQUIRED, THEREFORE, ADVANCE NOTIFICATION WILL BE
FURNISHED.

CC:  FILE

ENTERED NOV 2 2 2006

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - NOVEMBER 1, 2006
================================= (COU122) =================================
AIS #: 00174406A    SSN: 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  RACE/SEX: B/M   DATE OF BIRTH: 01/25/1969
NAME: DUNKLIN, WILLIE EARL            CUSTODY: MED9  SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT    TIME SRVD: 10Y08M11 LAST DISC: 05 26 2006
CRME: ROBBERY I                       MIN REL DT: 03/04/2013 ACTIVE DET: 0

DISC: INSUBORDINATION              PRL CONS:   12/01/2006 EDUCAT LEV: 07

WL/PGM: Lawnmower Crew      PRIM OCCUP: LABORER - GENERAL

RECOMMENDED INSTITUTION: **EASTERLING**          RECOMMENDED CUSTODY: **MED**

JUSTIFICATION: ANNUAL REVIEW: Violent offender serving a 20 year term for Robbery I

( subj. & co-defendant robbed male & female store owners @ gunpoint. Female victim was

knocked to the ground & kicked several times. Subj. then stole cash. There is victim injury

noted per PSI. No detainers or sex convictions noted. Per Intake subj. has a 01/96/Escape II

-Subj. walked off from county jail but was recaptured same day (no force noted). Denies

substance abuse history @ intake. Received RV # 57 on 05/26/06. Recommend no changes

due to negative behavior.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED!  MRE, COETS/OT/JF 20-06       APP. S/L:

_Tyrone S. Bauon_ 11-2006        _Cuterf Dauy_aif      20 NOV 06
CLASSIFICATION SPECIALIST        DATE   WARDEN OR DESIGNEE      DATE

_Brian Mitchell_ 11-20-06        _Marici Shene_ 11/24/06
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.  DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____

_____

                                 CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____

_____

                                 CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED/TO: _____  REASONS: _____

                  _No Change_ 11/21/06

                                 CRB MEMBER              DATE

FINAL DECISION: INST _____ CUSTODY _____ DATE _____

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: _____
    LAST ACTION: 11/05  REL _Islaam_   DNA: _____ SKILLS: _Auto Mechanic_ 11/4/06

Psychmeds: _NU_

Diabetic: _NU_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406    )
    Plaintiff,                    )
                                )
VS.                          )
                                )     CASE NO. 2:06-CV-1063-MEF
                                )
BOB RILEY, et.al.                )
    Defendant (s)               )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Carter F. Davenport, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Carter F. Davenport, and I am presently employed as Warden II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have not forced Inmate Willie Dunklin, #174406 or any other inmates to take Crime Bill SAP. On May 3, 2006, Classification Specialist recommended Crime Bill SAP as a program needed for Inmate Dunklin. Inmate Dunklin's semi-annual review was conducted, it was recommended no change due to time serve and lack of program participation (Exhibit 1). Inmate Dunklin has not been denied Work Release Program. Inmate Dunklin's on going negative behavior is one of the reasons for Work Release Program.

Inmate Dunklin allege that Easterling Correctional Facility is overcrowded and lack of security. Our Facility houses approximately 1263 inmates. At the present time we are understaffed with Correctional Officers, but we have officers to work overtime to fill in the areas that are needed.

I have not violated any of Inmate Dunklin's constitutional rights.

_____
CARTER F. DAVENPORT

Affidavit – Carter F. Davenport
Civil Action – 2:06-CV-1063-MEF
Page 2


SWORN TO AND SUBSCRIBED TO before me this the _____ 14th _____ day of
_____ December _____, 2006.

_____ Linda E. Teal _____
NOTARY PUBLIC

My Commission Expires: _____ 7-15-07 _____



# EASTERLING CORRECTIONAL FACILITY

## SEMI-ANNUAL REVIEW

05/03/2006

TO: _Dunklin, Willie_    AIS: _B/174406   9A-59_

FROM:   TYRONE S. BARROW, CLASSIFICATION SPECIALIST

YOUR INSTITUTIONAL FILE HAS BEEN REVIEWED AND YOU HAVE BEEN RECOMMENDED FOR THE FOLLOWING ACTIONS:

_____ RESTORATION OF _____ GOOD TIME.

NO CHANGES AT THE TIME DUE TO:

_____ A.    RESTRICTED OFFENDER STATUS

_____ B.    SEX OFFENDER STATUS

_____ C.    NEGATIVE BEHAVIOR _____

_____

_____

_____ D.    RISK ASSESSMENT SCORE _____

__X__ E.    TIME TO SERVE

__X__ F.    LACK OF PROGRAM PARTICIPATION/COMPLETION _CBS/AP, AA/NA_

_____

_____ G.    DETAINER _____

_____ H.    OTHER _____

_____

THE CLASSIFICATION COMMITTEE WILL CONDUCT YOUR ANNUAL PROGRESS REVIEW ON _11/06_ .    YOUR PRESENCE IS REQUIRED, THEREFORE, ADVANCE NOTIFICATION WILL BE FURNISHED.

CC:   FILE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406            )
    Plaintiff,                              )
                                            )
VS.                                     )
                                            )    CASE NO. 2:06-CV-1063-MEF
                                            )
BOB RILEY, et.al.                       )
    Defendant (s)                           )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of

Alabama at Large, personally appeared Tyrone Barrow, who being known to me and being by me duly

sworn, deposes and says under oath as follows:

My name is Tyrone Barrow, and I am presently employed as Classification Specialist, employed

by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama,

36017. I am over twenty-one (21) years of age.

Since Inmate Dunklin has been assigned to my caseload, as his Classification Specialist I have

made recommendations to Inmate Dunklin about available programs that he possible could take during his

incarceration here at Easterling Correctional Facility. After reviewing Inmate Dunklin's institutional file

(Exhibit A) on December 19, 2005, I listed Crime Bill SAP and AA/NA as program needs. On May 3,

2006, I conducted a Semi-Annual Review (Exhibit B) and recommended no changes due to time to serve

and lack of program participation/completion referencing Crime Bill SAP & AA/NA. On November 20,

2006, during Inmate Dunklin's Annual Progress Review (Exhibit C), I recommend no changes due to

negative behavior.

I deny having violated any of Inmate Dunklin's Constitutional Rights.

_Tyrone Barrow_
TYRONE BARROW

SWORN TO AND SUBSCRIBED TO before me this the _14th_ day of

_December_, 2006.

_Charlotte Wilson_

My Commission Expires: My Commission Expires Jan. 24, 2008
NOTARY PUBLIC





# STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS

### EASTERLING CORRECTIONAL FACILITY
### 200 WALLACE DRIVE
**Bob Riley**              Clio, Alabama 36017-2615              **Donal Campbell**
**Governor**                    334-397-4471                    **Commissioner**

TO : *Dunklin, Willie B/174406    9A-59*

FROM: Tyrone S. Barrow, Classification Specialist

DATE: *12-19-05*

RE : File Review

Your institutional file has been reviewed:

Custody:    X medium    ____ min-in    ____ min-out

Program needs:    ____ ABE    ____ Trade School    X SAP/TC/Dual Diagnosis
    ✓ NA/AA    ____ Stress Management    ____ Reality Therapy
    ____ Values Clarification    ____ Depression    ____ Sexual Adj.
    ____ Anger Induced Acting Out    ____ Anger Management
    ____ Self-Concept Enhancement    ____ Healthy Use of Leisure
    ____ Personal Development    ____ Relapse
    ____ Sex Offenders Anonymous    ____ Domestic Violence Program

**Eligibility Dates for Custody Reductions:**

*NO* SIR    *NO* Work Release    *NO* Min-Out    *NO* Min-in

Semi-Annual Review Date: *05/06*. You will not be present during your Semi-Annual Review. If a change in custody and/or placement is being recommended, you will be served a 24 hour notice for progress review.

The Classification Committee will conduct your Annual Progress Review *11/06*.
Your presence is required, therefore, advance notification will be furnished.

Comments: *Bar time Criteria & eligible for minimum custody within Three years of earliest release date.*

If you have any questions, my open house is Tuesday, 1:30 - 3:30 p.m.

cc: Institutional File



## EASTERLING CORRECTIONAL FACILITY

### SEMI-ANNUAL REVIEW

05/03/2006

TO: _Dunklin, Willie_                    AIS: _B/174406   9A-59_

FROM:  TYRONE S. BARROW, CLASSIFICATION SPECIALIST

YOUR INSTITUTIONAL FILE HAS BEEN REVIEWED AND YOU HAVE BEEN RECOMMENDED FOR THE FOLLOWING ACTIONS:

_____ RESTORATION OF _____ GOOD TIME.

NO CHANGES AT THE TIME DUE TO:

_____ A.    RESTRICTED OFFENDER STATUS

_____ B.    SEX OFFENDER STATUS

_____ C.    NEGATIVE BEHAVIOR _____

_____

_____

_____ D.    RISK ASSESSMENT SCORE _____

__X__ E.    TIME TO SERVE

__X__ F.    LACK OF PROGRAM PARTICIPATION/COMPLETION _CB/AP, AA/NA_

_____

_____ G.    DETAINER _____

_____ H.    OTHER _____

_____

THE CLASSIFICATION COMMITTEE WILL CONDUCT YOUR ANNUAL PROGRESS REVIEW ON _11/06_ .  YOUR PRESENCE IS REQUIRED, THEREFORE, ADVANCE NOTIFICATION WILL BE FURNISHED.

CC:  FILE

ENTERED NOV 2 2 2006

ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM – NOVEMBER 1, 2006
======================================== (COU122) ========================================
AIS #: 00174406A    SSN: 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    RACE/SEX: B/M    DATE OF BIRTH: 01/25/1969
NAME: DUNKLIN, WILLIE EARL    CUSTODY:    MED9    SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT    TIME SRVD: 10Y08M11 LAST DISC: 05 26 2006
CRME: ROBBERY I    MIN REL DT: 03/04/2013 ACTIVE DET: 0

DISC: INSUBORDINATION    PRL CONS:    12/01/2006 EDUCAT LEV: 07

WL/PGM: Lawnmower Crew    PRIM OCCUP:LABORER - GENERAL

RECOMMENDED INSTITUTION: EASTERLING    RECOMMENDED CUSTODY: MED

JUSTIFICATION: ANNUAL REVIEW: Violent offender serving a 20 year term for Robbery I
( subj. & co-defendant robbed male & female store owners @ gunpoint. Female victim was
knocked to the ground & kicked several times. Subj. then stole cash. There is victim injury
noted per PSI. No detainers or sex convictions noted. Per intake subj. has a 01/96/Escape II-
-Subj. walked off from county jail but was recaptured same day (no force noted). Denies
substance abuse history @ intake. Received RV # 57 on 05/26/06. Recommend no changes
due to negative behavior.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: NKE,COE,TS/OF/JF-20-06    APP. S/L:
_Rhone S. Baron_ 11-2006    _Curtis Dawya_ _20 Nov 06_
CLASSIFICATION SPECIALIST    DATE    WARDEN OR DESIGNEE    DATE
_Bun Mitchell_ 11-20-06    _Mahree Greene_ 11/22/06
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____

CRB MEMBER    DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____

CRB MEMBER    DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____
_No Change_ 11/21/06

CRB MEMBER    DATE

FINAL DECISION: INST _____ CUSTODY _____ DATE _____

DATE INMATE INFORMED: _____    INMATE'S SIGNATURE: _____
LAST ACTION: 11/05    REL. Islaam    DNA: SKILLS: Auto mechanic

Psychmeds: NO
Diabetic: NO

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406       )
    Plaintiff,                     )
                                   )
VS.                                )
                                   )       CASE NO. 2:06-CV-1063-MEF
                                   )
BOB RILEY, et.al.                  )
    Defendant (s)                  )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Brian Mitchell, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Brian Mitchell, and I am presently employed as Psychological Associate II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On November 20, 2006, I attended the progress review of inmate Dunklin, Willie Earl, AIS# 174406A. I signed the review in agreement with the Classification recommendation (ExhibitA).

I deny having violated any of inmate Dunklin's constitutional rights.


_Brian Mitchell_
BRIAN MITCHELL


SWORN TO AND SUBSCRIBED TO before me this the ___14th___ day of
___December___, 2006.

_Linda E. Seal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

ENTERED NOV 2 2 2006

ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM – NOVEMBER 1, 2006
========================================(COU122)========================================

AIS #: 00174406A    SSN: 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   RACE/SEX:  B/M   DATE OF BIRTH: 01/25/1969
NAME: DUNKLIN, WILLIE EARL            CUSTODY:   MED9   SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT    TIME SRVD:  10Y08M11 LAST DISC: 05 26 2006
CRME: ROBBERY I                       MIN REL DT: 03/04/2013 ACTIVE DET: 0

DISC: INSUBORDINATION          PRL CONS:   12/01/2006 EDUCAT LEV: 07

WL/PGM: Lawnmower Crew     PRIM OCCUP: LABORER - GENERAL

RECOMMENDED INSTITUTION: EASTERLING          RECOMMENDED CUSTODY: MED

JUSTIFICATION: ANNUAL REVIEW: Violent offender serving a 20 year term for Robbery I
( subj. & co-defendant robbed male & female store owners @ gunpoint. Female victim was
knocked to the ground & kicked several times. Subj. then stole cash. There is victim injury
noted per PSI. No detainers or sex convictions noted. Per intake subj. has a 01/96/Escape II
-Subj. walked off from county jail but was recaptured same day (no force noted). Denies
substance abuse history @ intake. Received RV # 57 on 05/26/06. Recommend no changes
due to negative behavior.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: NRE, COETB(OK)11-20-06    APP. S/L:

_Rhonda S. Bauer_ 11-2006        _Catita Daugay_ 20 Nov 06
CLASSIFICATION SPECIALIST    DATE     WARDEN OR DESIGNEE            DATE
_Brian Mitchell_ 11-20-06            _Nadine Sheene_ 11/22/06
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC. DATE   CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____

_____        _____
                                           CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____

_____        _____
                                           CRB MEMBER              DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____   REASONS: _____
_____ No Change 11/21/06 _____
                                           CRB MEMBER              DATE

FINAL DECISION: INST _____ CUSTODY _____ DATE _____

DATE INMATE INFORMED: _____   INMATE'S SIGNATURE: _____
LAST ACTION: 11/05   REL. Islaam   DNA: 2/10/06 SKILLS: Auto mechanic

Psychmeds: NV
Diabetic: NV

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　VS.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)　　　　CASE NO. 2:06-CV-1063-MEF
　　　　　　　　　　　　　　　　　　　　　　)
BOB RILEY, et.al.　　　　　　　　　　　　　)
　　　　Defendant (s)　　　　　　　　　　　　)

## AFFIDAVIT

　　　　Before me, the undersigned authority, a Notary Public in and for said County and State of

Alabama at Large, personally appeared Latrice Greene, who being known to me and being by me duly

sworn, deposes and says under oath as follows:

　　　　My name is Latrice Green, and I am presently employed as Classification Specialist Supervisor,

employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio,

Alabama, 36017. I am over twenty-one (21) years of age.

　　　　I have in no way acted in collaboration with other ALDOC staff to make Inmate Dunklin the

victim of overcrowding, lack of security, or place him in health hazardous situations. I do not have the

authorization to allocate nor use Government funds for any Government program, including self-help

programs (such as pre-sap, crime bill sap, or aftercare) offered by the Department of Corrections.

　　　　I have neither recommended nor forced Inmate Dunklin to participate in any programs at

Easterling Correctional Facility. My signature is located on Dunklin's Annual Progress Review dated

November 20, 2006 as Classification Coordinator; however, I was a non-voting member regarding any

consideration of placement, custody or security level.

　　　　I have not violated any of Inmate Dunklin's Constitutional Rights.

LATRICE GREENE

Affidavit – Latrice Greene
Civil Action – 2:06-CV-1063-MEF
Page 2


SWORN TO AND SUBSCRIBED TO before me this the 2ⁿᵈ _____ day of
January _____, 2007.

Charlotte Wilson
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406     )
    Plaintiff,                   )
                                    )
VS.                       )
                                    )     CASE NO. 2:06-CV-1063-MEF
                                    )
BOB RILEY, et.al.               )
    Defendant (s)            )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Sharon Blakely, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Sharon Blakely, and I am presently employed as Mail Clerk, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have not violated Inmate Willie Dunklin #174406 or any other inmate's 1st and 14th amendments. Inmate Dunklin allege that I illegally functioning, and handling Inmate Dunklin and other inmates' mail is untrue. I have not taken any stamp or any other valuables from Inmate Dunklin or any other inmates' mail. Inmate Dunklin's allegation is false.

I have not violated any of inmate Dunklin's Constitutional Rights.

_Sharon Blakely_
SHARON BLAKELY

SWORN TO AND SUBSCRIBED TO before me this the 14th day of December, 2006.

_Charlotte Wilson_
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009



State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

December 19, 2005

ADMINISTRATIVE REGULATION                OPR:  OPERATIONS
NUMBER                          448

**INMATE MAIL**

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for inmate mail.

**II.    POLICY**

It is the policy of the ADOC to allow inmate mail in accordance with the U.S. Postal Service regulations and the guidelines set forth in this regulation.

**III.    DEFINITIONS**

A.    Contraband:  Any item that is not permitted by law or is either prohibited or not specifically authorized by ADOC or institutional policy. Items not issued by the ADOC, not sold on the institutional canteen, or not specifically authorized by the Warden.

B.    Correspondence:  Written communication to or from inmates (e.g., letters, post cards, greeting cards) delivered by a postal service.

C.    Inmate Personal Property:  The items and amounts of clothing, equipment, mail, or supplies, which an inmate is allowed to have in his/her immediate possession.

D.    Mail:  For the purpose of this regulation, the term "mail" includes but is not limited to: items delivered by the U.S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

E.    Mail Clerk:  Staff member(s) assigned to the institutional mailroom.

F.    Printed Materials:  Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

G.    Legal Mail:  Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies.

H.    <u>Reasonable Suspicion</u>:  Rational inference that a reasonably prudent person could make from specific objective facts.

I.    <u>Internet Materials</u>:  Downloaded copy from a web site.

J.    <u>Religious Materials</u>:    Books, pamphlets, brochures, and religious study courses.

K.    <u>Nudity</u>:  A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

L.    <u>Sexually Explicit</u>:  A picture/illustration of actual or simulated sexual intercourse, and/or oral sex, masturbation, or materials depicting sex.

## IV.    <u>RESPONSIBILITIES</u>

A.    The Warden shall be responsible for developing their institution/division Standard Operating Procedure (SOP) in accordance with AR 448, *Inmate Mail.*

B.    The Mail Clerk is responsible for the collection, inspection, and distribution of incoming/outgoing mail and for the maintenance of the mailroom records.

C.    The Chaplain or the Warden's designee is responsible for reviewing all mail entering the institution for an inmate that has been marked in care of the chaplain as it refers to religious materials.

## V.    <u>PROCEDURES</u>

A.    General Guidelines

    1.    The inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and institution.

    2.    There is no limit on the volume of letters the inmate can send or receive, or on the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order.

    3.    The Warden shall designate a secure mail area and drop boxes for outgoing mail accessible to all inmates.

    4.    Mail between inmates, whether state, county, city, out-of-state or federal may be allowed with the permission of the Wardens involved. It must be shown that there is a close personal relationship (immediate family) between such inmates.

5.     Mail and packages addressed to an inmate, who has been transferred or released to another known address, should be mailed to the inmate within 48 hours, excluding weekends and holidays.

    a.     If a forwarding address is not available, such mail and packages shall be returned to the sender.

    b.     If neither a forwarding or return address is available, the mail shall be returned to the post office.

6.     All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7.     At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8.     A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B.     Incoming Mail

1.     All incoming mail must be addressed so as to specify the inmate's name, inmate AIS number, and location within the institution.

2.     An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes)*

3.     Promotional checks will not be accepted through the mail for deposit to inmate accounts.

4.     Correspondence, printed material, inmate personal property, or money will not be hand delivered to inmates by visitors.  The Warden/designee may allow attorneys to hand deliver "Legal Mail" directly to the inmate, subject to being searched for contraband.

5.     Inmate will not receive mail stamped "Collect on Delivery (COD)."

C.     Outgoing Mail

1.     All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, dorm/cell number, street address or P. O. Box number as appropriate, city, state, and zip code. Additionally, the following stamped disclaimer will be included on every piece of outgoing mail sent by inmates.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.    An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes*)

3.    Designated staff should collect outgoing mail once each business day.

D.    Legal Mail

1.    Outgoing

a.    Inmates will be provided two (2) free stamps per week for **legal mail** only.

b.    Each Warden shall designate a box for "Legal Mail."

2.    Incoming

a.    A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

b.    The inmate will sign for all "Legal Mail" prior to receipt.

c.    All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.    Limitations

1.    When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

2.    When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

3.    The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

AR 448 – December 19, 2005

F.     Inspection

1.     Incoming mail, including "Legal Mail", shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband.

2.     All contraband will be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

3.     Every effort should be made to ensure that all incoming letters and packages are delivered within 72 hours after receipt at the institution, other than weekends and holidays. Inmates will be notified of rejected mail in accordance with procedures contained in V.G.

G.     Rejection

1.     In the event any incoming mail is rejected, the mail clerk will cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail,* then forward to the inmate in a timely manner.

2.     An inmate may appeal the rejection to the Warden/designee for review and final determination. (Refer to ADOC Form 448, *Notification of Rejected Mail*).

3.     If the appeal is denied, the inmate will have the option of returning the mail to the sender at his/her own expense within 30 days, or the property will be destroyed at the end of the 30-day period.

4.     Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden, it could reasonably be considered to:

a.     Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

b.     Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, and rebellion against government authority.

c.     Be an attempt to incite disobedience toward law enforcement officials or correctional staff.

d.     Be an attempt to give instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substance.

e.     Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

AR 448 – December 19, 2005

f.      Contain plans to escape, unauthorized entry into the institution, or information or maps, which might aid an escape attempt.

g.      Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

h.      Contain materials specifically found to be detrimental to inmate rehabilitation because it could encourage deviate criminal sexual behaviors.

i.      Publications that contain, nudity, graphic depictions of homosexuality, sadomasochism, bestiality, incest, or sex with children will be denied.

j.      Publications that primarily cover the activities of any sexual or political rights groups or organizations will normally be admitted.

k.      Before delivery of a publication may be denied, the Warden/designee must review the particular publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. It is not necessary to find that the particular recipient is likely to personally engage in such behavior before delivery can be denied.

5.      Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses included but are not limited to the following:

a.      The writing of letters containing obscene, profane, or indecent language.

b.      Writings that contain threats, derogatory or personal attack against any person.

c.      Writings that contain an escape plot or any other clear threats to the institution.

d.      Receipt of mail, identified as legal mail, from any individual or agency not meeting the legal mail definition.

e.      Writing which contain language purporting to solicit, claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm is prohibited.

f.      Any written material in outgoing or incoming mail not specifically intended for the addressee identified on the exterior of the

AR 448 – December 19, 2005

envelope, i.e. sending mail with contents addressed to another party for forwarding which constitutes mail kiting.

H.    Publications/Books

1.    Inmates may receive no more than two books per month and four magazines or newspapers or a combination thereof. (Refer to AR 338, *Inmate Property*, for the number of items an inmate may have in his/her possession at one time.)

2.    The publications should be received directly from the publisher or a recognized commercial distributor and be pre-paid from a family member or friend or from the inmate's Prisoners Money on Deposit Account (PMOD).

3.    Receipt of publications by inmates in segregation will be determined by provision indicated in AR 433, *Administrative Segregation and Housing for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation*.

4.    Each Warden/designee shall personally inspect each issue of a publication when a reasonable expectation that the particular issue violates the standards of this regulation. If they determine that the issue of the publication violates these standards then they will temporarily exclude the publication.

5.    The Warden/designee shall notify the inmate to whom the publication was addressed of the temporary ban.

6.    If the inmate appeals the temporary ban, it will remain in effect pending a final resolution. Upon notice of the appeal, the Warden will furnish a copy of the documentation on the matter to the Commissioner/designee. This documentation will include copies of pages of the excluded issue that contain material that has been identified as violating the restrictions.

7.    The Commissioner/designee will review the action taken by the institution to exclude that issue and either confirm or deny them.  If the temporary ban is confirmed, the inmate, the Warden, and all other institutions will be notified, the issue is permanently banned, and the matter closed. The documentation supporting the ban will be retained by the Legal Division and at the institution.

8.    If the temporary ban is denied, the publication will be given to the inmate and the entire matter dropped and all documentation destroyed.

9.    The permanent ban of an issue of a publication may not be relied upon to support an exclusion of a subsequent issue. For example, if the January issue of XYZ magazine is permanently banned, this ban may not be used

AR 448 – December 19, 2005

to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

10.     Inmates will not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I.     Packages

1.     All religious materials such as books, pamphlets, brochures, and religious study courses shall be sent to the inmate in care of the Chaplain, and will be distributed by the Chaplain after approval and limits have been obtained from the Warden.

2.     Authorized inmates will be allowed to purchase, from their PMOD accounts, arts and craft items through approved reputable suppliers.

3.     Prior to Christmas, the Commissioner will publish instructions concerning the receipt of Christmas packages for inmates.

4.     Criteria for an inmate to receive Christmas packages are as follows:

   a.     Inmates must have a four (4) month clear record prior to November 1st – no disciplinaries or behavior citations.

   b.      Inmates who receives one (1) formal or informal disciplinary in the months of November and December will not be eligible to receive a package.

   c.      Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence of a serious nature will be restricted from receiving packages one year from the incident.

5.     Incentive Packages will be accepted beginning May and September for one package per inmate from a person on the inmate's visitation/funds list. Packages postmarked after May 31 and September 30 will be returned to the sender C.O.D. Inmates must submit a request for an incentive package to the Warden/designee.

6.     Criteria for an inmate to receive an incentive package are as follows:

   a.     Inmate must have six-month clear record-no disciplinaries or behavior citations.

   b.     Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence

AR 448 – December 19, 2005

of a serious nature will be restricted from receiving packages one year from the incident.

c.    Inmate should have two positive counselors/work reports within the six-month period preceding the package.

7.    An inmate may mail outgoing packages. However, these packages will be inspected for unauthorized items prior to dispatch. The sender-inmate must provide postage and wrapping materials.

8.    The Commissioner/designee may allow other packages as deemed appropriate.

## VI.    DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.    FORMS

ADOC Form 448 – Notification of Rejected Mail

## VIII.    SUPERCEDES

This regulation formally included in Administrative Regulation 303, dated May 30, 2000.

## IX.    PERFORMANCE

ACA standards for Adult Correctional Institutions, fourth edition:  4-4487; 4-4490; 4-4491; 4-4492; 4-4494; 4-4496

_Donal Campbell_

Donal Campbell, Commissioner

AR 448 – December 19, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: _____     Date: _____
          Institutional Mail Room

To: Inmate _____     AIS#: _____

   Cell/Dorm: _____     Bed #: _____

Correspondence From: _____

Date received at this Institution: _____

Is being returned to sender due to the following reason(s): _____
_____
_____
_____

The inmate has the option to return mail to sender at his/her own expense within thirty (30) days or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State your reason(s) for appealing in writing below and return this form to the Warden/designee:

_____
_____
_____
_____
_____
_____
_____

_____ /_____
Inmate Signature                                                        AIS#

_____
Date

**Appeal/Denied**

_____
Printed Name
_____
Authorized Signature
_____
Date returned to sender

**Appeal/Upheld**

_____
Printed Name
_____
Authorized Signature
_____
Date returned to inmate

**ADOC Form 448 – December 19, 2005**

AR 448 – December 19, 2005