IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE EARL DUNKLIN, #174406,      )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     CIVIL ACTION NO. 2:06-CV-1063-MEF
                                   )                  [WO]
                                   )
BOB RILEY, et al.,                 )
                                   )
            Defendants.            )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by
Willie Earl Dunklin ["Dunklin"], a state inmate, in which he challenges actions taken against
him during his confinement at the Easterling Correctional Facility ["Easterling"].  Dunklin
names Bob Riley, Governor of the State of Alabama, Richard Allen, Commissioner of the
Alabama Department of Corrections, Gwendolyn C. Mosley, the warden of Easterling, Carter
Davenport, an assistant warden, Brian Mitchell, a psychological associate, Latrice Green, a
classification specialist supervisor, Tyrone Barrow, a classification specialist, and Sharon
Blakely, a mail clerk, as defendants in this cause of action.  Dunklin alleges the conditions
at Easterling are violative of his constitutional right as the facility is overcrowded,
understaffed and a health hazard.  Dunklin also complains defendants Barrow, Green,
Mitchell and Davenport recommended that he enroll in a substance abuse program without
proper reason and denied him access to the work release program.  Finally, Dunklin contends

defendant Blakely is not bonded as required by administrative regulations and asserts his belief that items are disappearing from the mail received by inmates.  Dunklin seeks injunctive relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing each of Dunklin's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of January 23, 2007 - Court Doc. No. 24*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord

---

remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

> deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Dunklin is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of

4

party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier

5

of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Dunklin fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III. DISCUSSION

### A. Eleventh Amendment Immunity

With respect to the claims Dunklin lodges against the defendants in their official

capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Respondeat Superior - Governor Bob Riley

A review of the pleadings, motions and other documents filed in this case shows that defendant Riley is sued solely due to his position as Governor of the State of Alabama.  The

7

law is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of subordinates/employees under either a theory of respondeat superior or vicarious liability); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (a prisoner simply cannot rely on theories of vicarious liability or respondeat superior to establish liability).  Thus, defendant Riley can be liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Dunklin does not allege that defendant Riley personally participated in actions concerning the conditions about which he complains or the decisions regarding his classification.  Additionally, it is undisputed that defendant Riley is not involved in the daily operation of Easterling.  Moreover, Dunklin fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by defendant Riley and the alleged constitutional deprivations.   A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving

8

force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir.1985)." *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006).  Consequently, the claims against defendant Riley lack an arguable basis in law and are therefore subject to summary dismissal pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[2]

## C.  Conditions of Confinement

Dunklin complains the correctional defendants enacted policies and procedures which resulted in overcrowding and under staffing at Easterling.  He further complains that the overcrowded conditions constitute a hazard to his health.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  The defendants filed evidentiary materials in which they concede Easterling houses more inmates than its designed capacity and is not fully staffed but nevertheless maintain that no violation of inmate Dunklin's constitutional rights occurred due to the challenged conditions.  *Defendants' Exhibit 1 (Affidavit of Gwendolyn C. Mosley) - Court Doc. No. 23-2* at 1.

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347,

---

[2]Although *Neitzke* interpreted 28 U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware,  ... and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.

In order to survive summary judgment on his claims challenging the conditions of confinement at Easterling, Dunklin must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official

10

must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also 'draw that inference.' *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain.... Conditions ..., alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency ....  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes*, 452 U.S. at 347. "[C]onduct that does not purport to be punishment at all [such as claims related to conditions of confinement] must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To determine whether conditions of confinement constitute cruel and unusual punishment violative of the Eighth Amendment, the court must look to "the effect" the condition has upon the inmate.  *Rhodes*, 452 U.S. at 366.  In a case involving conditions of confinement generally or several different conditions, the court is required to consider whether the claims together amount to conditions which fall below constitutional standards.

11

*Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of the plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.... To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 304-305 (emphasis in original).

In his complaint, Dunklin presents only general allegations of unconstitutional conditions at Easterling. This pleading is clearly the type of unstructured "overall conditions" complaint that the Supreme Court found without constitutional merit in *Wilson*. These allegations do not rise to the level of cruel and unusual punishment because Dunklin has presented no evidence, sufficiently probative or otherwise, which shows obduracy or wantonness on the part of the defendants. *Whitley*, 475 U.S. at 319. Moreover, Dunklin fails to demonstrate any effect the alleged constitutional violations had upon him. Instead, his complaint and response to the motion for summary judgment focus upon potential risks, possible consequences and speculative damages.

12

Upon thorough review of the evidentiary materials filed in this case, the court concludes that the challenged conditions do not deprive Dunklin of the minimal civilized measure of life's necessities nor subject him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.  In addition, the evidence before the court simply does not support a finding that the defendants acted with deliberate indifference or reckless disregard to Dunklin's constitutional rights.   The living conditions at the Easterling Correctional Facility, cramped as they might be, do not constitute, therefore, cruel and unusual punishment. *Rhodes*, 452 U.S. at 366.  Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### D.  Classification

Dunklin complains defendants Barrow, Green, Mitchell and Davenport denied him placement in a lower custody classification, including access to the work release program, even though he meets the eligibility criteria for such classification.  An inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979).  Moreover, the law is well settled that an inmate in the Alabama prison system has no state created liberty interest which entitles him to work release, *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988), nor does the Due Process Clause itself create

13

a constitutionally protected interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due process interest in work release). Thus, Dunklin's challenges to the constitutionality of the classification process entitle him to no relief.

### E.  Equal Protection

To the extent Dunklin argues he has been deprived of equal protection because "other inmates enjoy the opportunity to" participate in the work release program, *Plaintiff's Complaint - Court Doc. No. 1* at 2, he is likewise entitled to no relief.

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S.

14

252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Dunklin bears the burden of producing facts which would be admissible at trial and sufficient to show that the actions of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252.  Instead, the law is clear that the plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants. *Id*. at 249.

Initially, the court notes Dunklin relies exclusively on the fact that other inmates have been provided the opportunity to participate in work release as the basis for his equal protection challenge.  However, the mere differential treatment of inmates fails to constitute

a violation of the Equal Protection Clause. *E & T Realty*, *supra*. In addition, Dunklin fails to identify any similarly situated inmate who received more favorable treatment from the defendants. Thus, Dunklin's "equal protection claim [likewise] necessarily fails ... because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. Moreover, it is clear from the evidentiary materials properly before the court that the defendants based their classification decisions on the plaintiff's negative behavior and their opinion, based on review of his institutional file, that he did not warrant placement in a lower custody classification level. Consequently, Dunklin also fails to demonstrate the defendants acted with invidious discrimination. *Id*. Dunklin has therefore not been denied equal protection of the law with respect to the challenged classification decisions and summary judgment is due to be granted in favor of the defendants on this claim.

### F.  Referral for Substance Abuse

Dunklin argues defendant Barrow violated his constitutional rights by recommending he receive additional substance abuse treatment. Dunklin maintains he had not relapsed and this treatment was therefore not necessary to his rehabilitation. *Plaintiff's Complaint - Court Doc. No. 1* at 3.

To state a viable claim for relief in a 42 U.S.C. § 1983 action, the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Willis v.*

16

*University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).  Mere referral of an inmate for a rehabilitative program does not allege the deprivation of any constitutionally protected right, privilege or immunity.  Thus, this claim is due to be dismissed as frivolous in accordance with the provisions of  28 U.S.C. § 1915(e)(2)(B)(i).

### G.  The Prison Mail Clerk - Sharon Blakely

Dunklin complains defendant Blakely is not bonded as required by postal and prison regulations applicable to persons who handle the mail.  The violation of administrative regulations does not amount to a violation of the plaintiff's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).

### H.  Confiscation of Property

Dunklin makes the conclusory and purely speculative assertion "that stamps and other valuables of inmates mail is disappearing."  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  Dunklin does not allege he personally lost any property nor does he identify the individual responsible for the alleged confiscation of inmate property.  Defendant Blakely adamantly denies taking "any stamp or any other valuables from Inmate Dunklin or any other inmate's mail." *Defendants' Exhibit 6 (Affidavit of Sharon Blakely) - Court Doc. No. 23-7.*  Under the circumstances of this case, Dunklin has failed to present any evidence to establish a violation of his constitutional rights regarding an improper confiscation of **his** property and summary judgment is due to be granted in favor of the defendants for such failure.  *Waddell*, 276 F.3d at 1279.

17

Moreover, even had Dunklin asserted a claim regarding the confiscation of property belonging to him, no relief is due from this court.

> If the [stamps and valuables were] not returned because of [the correctional defendants'] negligence, there has been no unconstitutional deprivation of property. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (negligent loss of property does not rise to the level of a constitutional violation.)  If [the defendants have] intentionally refused to return the [stamps and valuables], plaintiff has not alleged a constitutional violation.  In *Hudson v. Palmer* the Court ruled that an 'unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause ... if a meaningful postdeprivation remedy for the loss is available.'  104 S.Ct. at 3202, 82 L.Ed.2d at 407.

*Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11ᵗʰ Cir. 1986).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Dunklin to seek redress for any items which may have been taken from him.  *Ala. Code* § 41-9-60 *et seq*.  Consequently, Dunklin's allegation that the defendants violated his constitutional right to due process upon the confiscation of property, whether such was the result of negligence or an intentional act, provide  no basis for relief in this cause of action.

## I.  Claims on Behalf of Other Inmates - Lack of Standing

Standing is a cornerstone of American jurisprudence on which jurisdiction lies.  "[A] litigant may only assert his own constitutional rights or immunities."  *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction).  "The

18

essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703 7 L.Ed.2d 663 (1962)." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two aspects.  The first is the minimum "case or controversy" constitutional requirement of Article III.  *Saladin*, 812 F.2d at 690.  "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin*, 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  If any element is lacking, a plaintiff's claim is not viable.  In addition, the Supreme Court has established several requirements for standing based on prudential considerations.  *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has ... stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether

19

the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

To the extent Dunklin seeks to proceed on claims regarding alleged violations of the rights of other inmates who may have had property confiscated, he lacks standing to assert the constitutional rights of these individuals as he is not "asserting his ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). Thus, any claim presented by Dunklin with respect to actions which may have been taken against other inmates entitles Dunklin to no relief.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before October 21, 2009, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of October, 2009.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE